IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SHARON ELAINE HOLMES, et al.,<br><br>　　　　　　　　　Plaintiffs,<br><br>vs.<br><br>STATE OF UTAH, DEPARTMENT OF WORKFORCE SERVICES,<br><br>　　　　　　　　　Defendant. | ORDER & MEMORANDUM DECISION<br><br><br><br>Case No. 2:03-CV-909 TC<br>(Case No. 2:03-CV-916 Consolidated) |

　　　　This matter is before the court on the motion for summary judgment submitted by Defendant State of Utah, Department of Workforce Services. Plaintiffs Sharon Holmes, Delores Giacoletto and Jodie Jackson filed this lawsuit on October 14, 2003, alleging sexual discrimination under Title VII. 42 U.S.C. § 2000e. Plaintiffs allege a continuously hostile work environment resulting, primarily, from the actions of one employee of the State of Utah, Department of Workforce Services ("DWS"). Plaintiff Ronda Stevens filed a separate lawsuit on October 16, 2003, also naming the DWS as Defendant and alleging sexual discrimination under Title VII. Ms. Stephens specifically alleges a hostile work environment, quid pro quo harassment, negligent hiring and supervision, and intentional infliction of emotional distress. The two separate actions were consolidated on January 29, 2004.

**BACKGROUND**

　　　　This case arises out of Plaintiffs' allegations of sexual harassment at the Cedar City

Office of the DWS.  All of the various Plaintiffs were employees at that office.  Allegations were first made in May of 2001 when Ms. Holmes alerted the Utah Public Employees Association ("UPEA") to what she considered inappropriate behavior by a high-ranking employee of the DWS in Cedar City.   All of Ms. Holmes' initial allegations of sexual harassment and discrimination to the UPEA, as in this case, were centered around the actions of Curtis Johnson, a former supervisor at the Cedar City office of DWS.  Mr. Johnson was a DWS employee for over thirty-two years and had served as its interim Executive Director.

In response to Ms. Holmes' allegations, the UPEA notified the Department of Human Resource Management (DHRM). DHRM began an investigation.  During this initial investigation, every employee of the Cedar City office was interviewed.  Mr. Johnson admitted to inappropriate behavior and was suspended for three days without pay on August 7, 2001.  Mr. Johnson retired on June 28, 2002, but continued to visit the office where his wife was still employed.  In March of 2003, Plaintiff Stephens asserted  new allegations of harassment by Mr. Johnson.  Specifically, Ms. Stephens reported that she felt harassed by Mr. Johnson when he followed her from the DWS office to the post office.  As a result of Ms. Stephens' complaint, Mr. Johnson was barred from entering the Cedar City Employment Center and prohibited from calling its main telephone line.[1]

Plaintiffs in this case all filed claims with the Equal Employment Opportunity Commission ("EEOC") and each received a "Notice of Right to Sue" in approximately July of 2003.  The specific facts pertinent to each Plaintiff will be examined as necessary.  Defendant State of Utah has alleged that the Plaintiffs' various causes of action under 42 U.S.C. § 2000e are

---

[1]The DHRM, in response to Ms. Stephens' allegations, sent John Levanger to conduct an investigation. The Plaintiffs have variously asserted that they felt harassed by Mr. Levanger during the investigation.  These allegations, however, are wholly separate from the Plaintiffs' claim of a hostile work environment and Plaintiffs have not provided facts to support their broad assertions of harassment in this respect.

barred because they were not filed with the EEOC within the time period for filing charges under 42 U.S.C. § 2000e-5.

## ANALYSIS

Federal Rule of Civil Procedure 56 permits the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Fed. R. Civ. P. 56(c); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to overcome a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." Liberty Lobby, 477 U.S. at 252. See also Anderson v. Coors Brewing Co., 181 F.3d 1171, 1175 (10th Cir. 1999) ("A mere scintilla of evidence supporting the nonmoving party's theory does not create a genuine issue of material fact."). "A party cannot create an issue of fact by declaration contradicting his or her own deposition or other sworn testimony." Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806-07 (1999).

"Title VII requires a litigant to file a claim within 300 days of the alleged discriminatory conduct." Duncan v. Manager, Dept. of Safety, City and County of Denver, 397 F.3d 1300, 1308 (10th Cir. 2005). The statute reads:

> A charge under [42 U.S.C. § 2000e] shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . . except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency. . . , such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier[.]

42 U.S.C. § 2000e-5(1).  As stated by the Tenth Circuit: "Title VII is not intended to allow employees to dredge up old grievances; they must promptly report and take action on discriminatory acts when they occur.  Unlitigated bygones are bygones."  Duncan, 397 F.3d at 1308.

"Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.  Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"  National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002).  The general rule is that discrete discriminatory acts are not actionable under Title VII if they occurred more than 300 days before a plaintiff filed the charge with the EEOC.  See Id. at 113; see also Martinez v. Potter, 347 F.3d 1208, 1210 (10th Cir. 2003).  This is true even if the discrete acts are related to acts that occurred within the relevant filing period.  Morgan, 536 U.S. at 113.  See also Croy v. Cobe Laboratories, Inc., 345 F.3d 1199, 1202 (10th Cir. 2003).  In this case, the preponderance of the allegedly inappropriate behavior is intended to support a claim of a continuing hostile work environment, and therefore must be analyzed differently.

For the purpose of determining whether an action for a hostile work environment was timely filed: "the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment."  Morgan, 536 U.S. at 118.  If any claim which constitutes part of a hostile work environment is filed within the requisite time period, then the employee may recover for all acts that are part of the hostile work environment, even those which would otherwise be time barred if they were discrete acts of discrimination.  Id. at 119.

The Supreme Court has made clear that the court's task "is to determine whether the acts

about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period." Id. at 120. See also Duncan, 397 F.3d at 1308-09. A series of alleged events constitute a hostile environment where the pre- and post-limitations period incidents involve the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers. Morgan, 536 U.S. at 120; see also Duncan, 397 F.3d at 1309.

In order to determine whether a hostile work environment claim exists, the court "look[s] to 'all the circumstances,' including 'the frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with employee's work performance.'" Morgan, 536 U.S. at 117 (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993)). "A plaintiff may prove the existence of hostile work environment sexual harassment in violation of Title VII where [sexual] conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." Hirase-Doi v. U.S. West Comm., Inc., 61 F.3d 777, 782 (10th Cir. 1995) (quotations and citations omitted).

The Tenth Circuit has long held that evidence of a general work atmosphere, including evidence of harassment of other employees, may be considered in evaluating a claim of a hostile work environment. Id.; see also Hicks v. Gates Rubber Co., 833 F.2d 1406, 1415-16 (10th Cir. 1987) ("incidents of sexual harassment directed at employees other than the plaintiff can be used as proof of the plaintiff's claim of a hostile work environment."); Stahl v. Sun Microsystems, Inc., 19 F.3d 533, 538 (10th Cir. 1994). To rely upon allegations of conduct directed toward other employees, a plaintiff must demonstrate that she was aware of the conduct at the time it occurred. Hirase-Doi, 61 F.3d at 782.

Having reviewed all of the materials submitted in this case, the court addresses each Plaintiff's claims in turn.

Plaintiff Holmes

Ms. Holmes worked at the DWS Cedar City Employment Center from 1997 until 2001. In 2001, Ms. Holmes voluntarily transferred to the Woods Cross DWS office. (Affidavit of Sharon E. Holmes ("Holmes Aff."), Dkt. No. 86, at 2). Ms. Holmes' complaint focuses on the existence of a hostile work environment through the harassment of Mr. Johnson. Ms. Holmes filed her charge with the EEOC on March 22, 2003. In order to state a claim for a hostile work environment, she must have alleged incidents contributing to the hostile work environment that occurred on or after May 27, 2002.

Ms. Holmes transferred offices from the Cedar City office (the site of Mr. Johnson's inappropriate behavior) over a year before she filed her charge with the EEOC, well beyond the expiration of the 300-day filing period applicable to a claim of a hostile work environment under Title VII. The fact that Ms. Holmes was not present in the allegedly hostile work environment of the Cedar City office for over a year before she filed with the EEOC essentially precludes her claim. The court, however, addresses Ms. Holmes' allegation of one incident that did occur within the statutory period.

Ms. Holmes alleges that, after her transfer, on June 3, 2002, she went to the Cedar City office to visit with some friends and Mr. Johnson hugged her in an inappropriate manner. (July 19, 2004 Deposition of Sharon E. Holmes ("Holmes Depo.") attached as Ex. 2 to Def. Mem. Supp. Mot. Summ. J. at 193-95). Ms. Holmes testified that she did not have any contact with Mr. Johnson between moving to the Woods Cross office and her visit to Cedar City. (Holmes

Depo. at 204-05).

Ms. Holmes' claim of an inappropriate hug occurred long after she had left the allegedly hostile environment and was no longer working in any capacity with Mr. Johnson. Ms. Holmes' single allegation within the requisite time period does not suffice to constitute a hostile work environment claim under the standard dictated by the Supreme Court. In order to properly state a claim for a hostile work environment "there must be a relationship between the acts alleged after the beginning of the filing period and the acts alleged before the filing period [.]" Duncan, 397 F.3d at 1308. Here, there is no such relationship. Ms. Holmes' transfer was an intervening act rendering the hug not part of the same hostile working environment she experienced before her transfer. See id. at 1309.

Plaintiff Giacoletto

Ms. Giacoletto, an employee of the State of Utah since 1994, filed her charge with the EEOC on March 21, 2003. In order to timely state a claim for a hostile work environment under Title VII, Ms. Giacoletto must have alleged incidents that occurred on or after May 26, 2002. Ms. Giacoletto has alleged a total of four incidents– three of which occurred before the 2001 investigation by the DHRM. These claims are only actionable upon a showing that they are part of a continuous hostile working environment that includes events that did occur within the requisite filing period. Duncan 397 F.3d at 1308.

The question is whether the fourth, and final, incident of which Ms. Giacoletto complains is part of a series of incidents which are part of a single claim of a hostile work environment. "[A] series of alleged events comprises the same hostile environment where 'the pre- and post-limitations period incidents involve[d] the same type of employment actions,

occurred relatively frequently, and were perpetrated by the same managers.'" Id. at 1309 (quoting Morgan, 536 U.S. at 120).

Ms. Giacoletto alleges that in November of 2002 Mr. Johnson initiated inappropriate physical contact after she had consented to a back rub. This event occurred sixteen months after the previous alleged act and well-after the investigation by the DHRM in 2001. Ms. Giacoletto stated in her deposition that by the time of the DHRM investigation in 2001: "Curtis had pretty much left me alone. Our friendship and working relationship were intact." (Deposition of Delores M. Giacoletto ("Giacoletto Depo.") attached as Ex. 15 to Def. Mem. Supp. Mot. Summ. J. at 10). Ms. Giacoletto, in her affidavit, also acknowledged that the November 2002 event occurred after Mr. Johnson's retirement. (Aff. of Delores Giacoletto ("Giacoletto Aff."), Dkt. No. 87, at 6). Ms. Giacoletto's allegation of an inappropriate encounter with Mr. Johnson from November 2002, is attenuated both in time and circumstance from her 2001 allegations and cannot be said to be part of the same hostile work environment.

The November 2002 incident is separated from her earlier allegations by a great deal of time, the intervening investigation and reprimand by the DHRM and Mr. Johnson's retirement. No jury could rationally conclude that the November 2002 incident is part of the same hostile environment as those acts which occurred before the DHRM investigation. See Duncan, 397 F.3d at 1308-09. The November 2002 incident, standing alone, is insufficient to support a claim of a hostile work environment.

Plaintiff Jackson

Ms. Jackson filed her charge with the EEOC on April 5, 2003. In order to properly state a claim, Ms. Jackson must point to at least one incident that occurred on or after June 10, 2002.

At her deposition, Ms. Jackson authenticated a typewritten complaint she made to the EEOC. (Aug. 5, 2004 Deposition of Jodie Jackson ("Jackson Depo.") attached as Ex. 3 to Def. Mem. Supp. Mot. Summ. J. at 43-44). Ms. Jackson testified that her typewritten document indicated the last specific incident of harassment. (Id.; see also Typed Statement of Jodie Jackson attached as Ex. 20 to Def. Mem. Supp. Summ. J.). Ms. Jackson's typewritten statement indicates that the last identifiable incident occurred in 2001.

Ms. Jackson's claims are well-outside the time allowed for the filing of a claim under Title VII.

Plaintiff Stephens

Ms. Stephens has asserted claims under Title VII for both a hostile work environment and for quid pro quo sexual harassment.[2] Ms. Stephens filed her charge with the EEOC on April 1, 2003. In order to timely state a claim under Title VII, Ms. Stephens must have alleged incidents of harassment or discrimination that occurred on or after June 6, 2002.

a. Quid Pro Quo Sexual Harassment

In support of her claim for quid pro quo sexual harassment, Ms. Stephens alleges that she was passed over for promotion several times because of her reaction to Mr. Johnson's advances. Ms. Stephens claims to have been passed over for promotion on at least eight occasions. While this number is disputed by Defendant, in considering a motion for summary judgment, the court views all inferences in favor of the non-movant.

The two most recent occasions on which Ms. Stephens alleges she was passed over for

---

[2] Ms. Stephens also initially asserted claims for negligent hiring, supervision, retention, and a separate claim for intentional infliction of emotional distress. She has acknowledged that these claims are barred the Utah Governmental Immunity Act. (Def. Ronda Stephens' Mem. Opp. Mot. Summ. J. at 29).

promotion occurred on approximately December 14, 2001, and November 21, 2002.  The

December 14, 2001 claim is not within the requisite time period.  To the extent that Ms. Stephens

presents this occasion, and all others that occurred before, as discrete acts of harassment for

which she seeks compensation, she is time barred.  "[D]iscrete discriminatory acts are not

actionable if time barred, even when they are related to acts alleged in timely filed charges."

Morgan, 536 U.S. 102.

The claim related to the November 21, 2002 promotion is within the statutory time period

for filing a claim.  Mr. Johnson, however, was no longer employed by DWS, having retired on

June 28, 2002.  There is no indication that he was involved in the decision not to promote Ms.

Stephens on that occasion.   "Absent the possibility that job benefits were conditioned 'on an

employee's submission to conduct of a sexual nature' and that 'adverse job consequences result

from the employee's refusal to submit to the conduct,' there can be no legitimate claim of quid

pro quo sexual harassment."  Wilson v. Mackala, 303 F.3d 1207, 1221 (10th Cir. 2002) (quoting

Hicks v. Gates Rubber Co., 833 F.2d 1406,1414 (10th Cir. 1987)).

    b.  Hostile Work Environment

Ms. Stephens has also made a claim of a hostile work environment.  In support of this

theory Ms. Stephens has made two allegations of events that occurred within the relevant time

period: (1) that she was not given a promotion in November of 2002; and (2) that Mr. Johnson

followed her to the post office in March of 2003.[3]

---

[3] As discussed above, a plaintiff may allege incidents of harassment involving others if she is aware of the incidents and those incidents contribute to the creation of a hostile work environment.  See  Hirase-Doi v. U.S. West Comm., Inc., 61 F.3d 777, 782 (10th Cir. 1995).
    Ms. Stephens alleges an incident of harassment toward Jennifer Webster, a fellow employee of the DWS, Cedar City office.  Ms. Webster testified at deposition that she had experienced unwanted advances from Mr. Johnson in "April or May" of 2002 and that she told Ms. Stephens about it. Ms. Stephens, however, is time barred from relying upon this allegation.  Ms. Webster specifically testified that the incident occurred in April or May of 2002.  The most liberal construction of that testimony indicates that the event may have happened as late as May 31, 2002, and there is nothing to indicate that it could have happened any later.  Ms. Stephens filed her claim with the

The question is whether the incidents of which Ms. Stephens complained that occurred within the relevant time period are part of a series of incidents which comprise of a valid a claim of a hostile work environment.  The court must determine whether "the pre- and post-limitations period incidents involve[d] the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." Morgan, 536 U.S. at 120.

Mr. Johnson retired before Ms. Stephens was passed over for promotion in November 2002 and also before he allegedly harassed her by following her to the post office in March or April of 2003.  Ms. Stephens' claim of being followed to the post office and of being passed over for promotion in November of 2002 are attenuated in both time and circumstance from all other allegations supporting a claim for a hostile work environment.  Because Mr. Johnson was not an employee of DWS at the time of these incidents and because he was not continuously present in the office, the court cannot find that these allegations suffice to support a claim of a hostile work environment under the rule laid out in Morgan and Duncan.

## ORDER

For the reasons set forth, Defendant's motion for summary judgment is GRANTED.

SO ORDERED this 13th day of June, 2005.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge

---

EEOC on April 1, 2003.  Ms. Stephens must have alleged incidents occurring on or after June 6, 2002, to properly state a claim under Title VII.
   The other Plaintiffs have also noted the claims of Ms. Webster, however none of them have averred that they had any knowledge of the incident before Ms. Stephens asserted the allegation in conjunction with this lawsuit.  Additionally, Ms. Webster testified that she did not tell anyone other than Ms. Stephens of the incident.  Therefore, the court does not consider this allegation for the other Plaintiffs.